Scott, Chief Judge.
The assignment of errors, in this case, relates solely to the charge of the court upon the trial of an action brought by defendant in error against plaintiffs in error, in the Court of Common Pleas of Wood county. The plaintiff below charged in his petition, in substance, that about the month of April, a. d. 1864, the defendants, at his request, agreed and undertook to become agents for him, and, as such, to purchase for him, at the least price for which the same could be obtained, a certain tract of land in said county. That they did, accordingly, shortly thereafter, purchase said land from the owner for the price of $2,400; and took a conveyance thereof from the owner to the defendant, I). K. Hollenbeck; and, thereupon, they informed the plaintiff', falsely and fraudulently, that they had purchased said land for him, at and for the price of $2,900, and had taken said conveyance to D. K. Hollenbeck, because of plaintiff’s temporary absence from home. That plaintiff relying upon the said false and fraudulent representations of defendants as to the price at which said land had been purchased, paid to them the said sum of $2,900, and received a conveyance of the premises from the said D. K. Hollenbeck. -That about the first day of April, 1868, plaintiff discovered the fraud which had been practiced- upon him, and that said land had been bought by defendants for $2,400, whereupon he applied to defendants and asked them to account for and repay to him the money which they had wrongfully obtained from him, and that they have refused so to do, to his damage $500, with interest; for which he asks judgment.
Defendants below answered, denying, among other things:
1. That the plaintiff ever employed the defendants as his agents for, or that the defendants ever, in any manner, acted as the agents of the plaintiff in the purchase by the plaintiff of the lands in his said petition described.
2. Deny all fraud with which they are charged.
3. Deny that they informed plaintiff they had procured *3 said property at and for the sum of $2,900or that they had paid $2,900 for said property.
And, by way of further answering plaintiff’s petition, they say that, as the agents of one David IT. Little, they sold to plaintiff the land in his said petition described, for the sum of $2,900, of all of which said plaintiff then and there had notice ; and they further aver that in their final settlement with the said Little, they accounted for and paid to him the sum of $2,900, being the full price for which the land was sold.
The plaintiff’, for reply to this answer, denies that the defendants were the agents of David II. Little, in the sale of the land in the petition described, denies that he ever had any notice or knowledge of any such agency, neither did he ever hear of the same until about the commencement of this suit.
Aud he denies that the defendants have paid said Little the sum of $2,900 ; and says if they accounted to said Little for said sum of $2,900, it has been since the commencement of this suit.
Upon the issues thus made, the cause was tried to a jury, at the January term, 1872, of the Court of Common Pleas of Wood county, and from a bill of exceptions taken on the trial, it appears that the plaintiff’, to maintain the issue on his part, was sworn and testified as follows :
In the spring of 1864,1 asked the defendant, Erancis Hollenbeck, to obtain for me a certain tract of land on the stone pike, being the land described in the petition in this case. He said he would write and see how little he could get the land for. Soon after, he said he had received a letter from the owner of the land, and that the least price for which he, the owner, would sell the land, was $2,900. I asked him if he thought it would be a good investment for me. He said it would be better than he had been making for me. I then told him to go and get the land for me. Before, however, the title to the land was obtained, I went away from Perrysburg, and left the matter with Mr. Hol-Leuheek to close up. I afterward got a deed for the land *4 from the defendant, D. Kidder Hollenbeck. I had various conversations with Francis Hollenbeck in regard to investing money in this land. "We talked about the amount of money necessary to make the purchase. As I had but a small amount of money, the price of the property I bought must be small, so I could make the payments. In the conversations I had about the purchase of this land, it was stated that the owner of it would take $1,000 down, and two annual payments for the remainder. Mr. Hollenbeck told me that the least the land could be bought for was $2,900. In one of the preliminary conversations, Mr. Hollenbeck told me the owner of the land held it at $3,100. He said he would write to the owner of the land and see if he could get it for less. He afterward said that he had received a letter from the owner, and that the least the land could be got for was $2,900. He did n’t tell me the name of the owner of the land, nor his residence, and I did n’t know either. I had no knowledge. I had no knowledge that the defendants were the agents of the owner. At the time of the purchase I had seen the land from the road, but had never been over it. The defendants designated the land as lying on a certain stone ridge, etc. At the time I was talking with Mr. Hollenbeck, and talking about this land, he said to me that it would be a better investment than had been made before, and referred to a conversation we had in 1861, with regard to investments. He said it would be better than an investment at ten per cent, interest. I have stated all the conversation held in 1864. I was about Perrysburg in 1864, from four to six weeks.
Ques. Did you rely on the defendants, at the time the land was purchased, to make the purchase for you ?
Ans. I did. I relied on the statement of Francis Hollenbeck, that $2,900 was the least the land could be bought for.
Cross-examined. In the conversation I had with Mr. Hollenbeck about making purchases, he said it would be a good investment. This was the first said about the land. Ho was uncertain as to the price of the land* but said he *5 believed the owner asked $3,100. He said the owner was anxious to sell it. When $2,900 was talked about, he said the owner would take that for it, as he wanted to invest in coal lands. Pie told me it would be a better investment than others I had made. He said he would write to the owner of the land and see what was the least price it could be bought for. P then told him to do so. At the time Mr. Plollenbeck gave me this price for the land, I was at liberty to take it or not. P certainly thought the land to be worth that money, or I would have refused to take the land. Believing that $2,900 was the least that the land could be got for, P agreed to take it. The bargain was closed so far as P was concerned. Nothing remained to be closed when I agreed to take the land at that price, but to close up the matter of getting the deed. I know that I could have got the land for less than $2,900. The owner was not present. Mr. Hollenbeck was to bargain for me, with the owner of the land, at $2,900. I told Mr. Hollenbeck to get the land for'tne at that price. I was there representing myself. The owner of the land was represented there only by his letter, which Mr. Hollenbeck told me he had received. He never showed the letter to me.
Re-examined. P relied on Mr. Hollenbeck as to the value of the land.
Plaintiff thereupon produced ¥m.'L. Cook as a witness, who testified as follows:
P was in the office of the defendants in the spring of 1864, and I asked the defendant, Francis Hollenbeck, if he heard from Arnold. He said to me, the plaintiff had been promoted. He took an envelope containing greenbacks from his safe, and said he heard from him in this way, sometimes. (The plaintiff had then returned to his regiment.) Defendant said he was purchasing this lot of land for the plaintiff. Said the time was wheirthe land could be bought for $1,900, but he now had to pay $2,400.
Cross-examined. I do not remember whether in my testimony last fall P said anything about the land on the pike.
*6 The plaintiff also produced and read as evidence the deposition of Jesse S. Norton as follows:
Ques. State name, age, and place of residence.
Ans. Age 55, residence Toledo, Ohio.
Ques. State whether or not you are acquainted with the plaintiff and defendants in this case.
Ans. I am.
Ques. State what, if anything, you know in regard to the defendants, Erancis Hollenbeck and D. Kidder Hollenbeck, acting for the plaintiff, Arnold McMahon, as his agents in the purchase of certain lands situated on the Maumee .and Western Reserve road, in Wood county, Ohio.
Ans. Erancis Hollenbeck told me that he was attending to McMahon’s business; that he sent his money to him and he invested it for him. My impression is that he told me that he had purchased this piece of land for him, I am not certain.
Ques. State at what time or times such conversations as you have mentioned occurred.
Ans. I can’t tell that, but think it was after I left the army, in December, 1862.
Ques. Will you describe the location of the land you have spoken of, as nearly as possible ?
Ans. It lies on the west side of the Maumee and Western Reserve road, north west of the old Morse farm; not certain whether it joins it or not. It is on the ridge. The ridge runs through a portion of it, I think.
The following letter, shown to have been written by the • defendant, E. Hollenbeck, and sent by mail to David Little, at Logan, Ohio, about the time of its date, was also read in evidence by the plaintiff:
Pebrysburs, O., June 20, 1864.
D. Little — Dear Sir: — The thousand dollars hand-payment on the purchase of your land will be ready before or by the end of the present month. The man to whom we proposed selling is now in front of Sherman’s army, and no communication can be had with him,-and hence the execu *7 tion of papers impracticable. Under this state of facts, we propose to send you the $1,000, and contract of sale to our D. K. Hollenbeck. This would leave title in you until all was paid. Or you can execute deed to him and he make notes and mortgage to you. In either case, it would, so far as you are concerned, be making the sale to D. K. H. Please let us hear from you as soon as convenient.
Yours truly, F. & D. K. Hollenbeck.
Thereupon the plaintiff rested his case.
The defendants, to maintain the issue on their part, first produced the defendant, Francis Hollenbeck, who was sworn and testified as follows :
I bargained the land to the plaintiff as the agent of David Little, the owner of the land. I informed the plaintiff that we were acting as the agents of said Little in said sale, and made known to him clearly our agency for the sale of the land. McMahon never requested us to buy the land as his agents. Did not act as the agent of the plaintiff in the transaction. The thought of being agent for the plaintiff never occurred to me in the transaction. I was not his agent in the transaction. He negotiated the bargain upon one side and I upon the other — he trying to buy the land for as little as he could, and I trying to sell it for all I could get. Have no recollection of the conversation related by ¥m, L. Cook. Am confident that in the year 1864 I never said to him that I heard from the plaintiff in the way in which said witness testified, for in that year and after the plaintiff returned to the army he sent us no money, and I could not have said that to him. It was not the fact.
I never told Jesse S. Norton that I was buying this land for the plaintiff.
Cross-examined. We received $830 from the wife of plaintiff* but did not retain it in our possession only a short time, perhaps not more than a day.
The defendant, D. K. Hollenbeck, being duly sworn, testified :
We sold the land to the plaintiff as agents of David Lit- *8 tie. We were not the agents of the plaintiff. We, at the time of making the bargain, made known to the plaintiff the fact that we were the agents of Little.
The foregoing was all the evidence given to the jury upon the trial of this case. There being no other or further evidence, the cause was submitted to the jury, and thereupon the defendants asked the court to instruct the jury as follows: That the facts given in evidence do not constitute a cause of action in law against the defendants, and they are entitled to the verdict of the jury; which charge the court refused to give, but charged the jury that the facts as testified to by the plaintiff constituted a cause of action against the defendants; that the defendants had not denied those facts, and had proved no defense to the action, and that the plaintiff was entitled to their verdict for $500, and interest thereon from the first day of July, A. d. 1864. And, thereupon, the said jury returned their verdict in this case accordingly without leaving their seats.
To all of which ruling and charge of the court the defendants at the time excepted, as well for the refusing to charge as they requested as in making the charge to the jury as aforesaid.
And, thereupon the defendants moved the court to set aside said verdict and grant them a new trial thei’ein, which motion the court overruled. To which ruling of the court the defendants also excepted.
The question whether or not the court of common pleas erred in refusing to give the instruction asked for, or in instructing the jury to find a verdict for the plaintiff below, was raised by petition in error in the District Court of Wood county, and was reserved by that court for decision here.
If the defendants, not being the agents of the owner for the sale of the land referred to in this controversy, or withholding from the plaintiff the knowledge of such agency, undertook and promised the plaintiff that they would act as his agents in negotiating a purchase of said land from the owner ; and if, in the course of such negotiation, they *9 ascertained from the owner that he was willing to sell said land for $2,400, and falsely represented to the plaintiff that the owner would not sell the land for less than $2,900, and thereby induced the plaintiff to pay $2,900 for that which the owner was willing to sell for $2,400 ; there can be no doubt that this was such a breach of the good faith due from an agent to his principal, such a fraud upon the plaintiff, as would give him a right to recover from the defendants the amount of the verdict and judgment rendered in the court below. This state of facts the plaintiff substantially alleged, among other things, in his petition, and, upon the trial, he offered evidence tending to prove each and all of these allegations. The court below, therefore, did not err in refusing to instruct the jury, “ that the facts given in evidence did not constitute a cause of action in law against the defendants, and that they were entitled to the verdict ot the jury.”
But these material averments of the petition were all expressly denied by the answer of the defendants. They deny, in their answer, that they were employed by the plaintiff as his agents, or acted as such, in his purchase of the land, and aver that they were, in the transaction, agents of the owner only, and, as such, sold the land to the plaintiff for the agreed price of $2,900; the plaintiff dealing with them as the known and avowed agents of the owner.
And their evidence, upon the trial, tended to prove the truth of these denials and averments.
Issues of fact having, therefore, been joined between the parties, by their pleadings, material to the plaintiff’s right of recovery, and each of the parties having offered evidence tending to maintain those issues on their respective parts, it was clearly within the sole province of the jury, under instructions from the court as to questions of law arising upon the trial, to decide upon the weight and credibility of the conflicting testimony, and to determine those issues of fact accordingly.
This is so, not only at common law, but also by the express. provisions of our code of civil procedure. (S. & C. *10 1020, sec. 263.) If, in this conflict of testimony, the jury believed the facts to be as testified to by the defendants, then the pla .ltiff was not entitled to their verdict. But these issues of fact, made by the pleadings, and supported, on each side, by conflicting evidence, the court below took from the jury, and, sua sponte, directed a verdict to be found for the plaintiff'. In so doing, the court erred, and its judgment must, therefore, be reversed, and the cause remanded for trial de novo.
Hay, Wright, Johnson, and Ashburn, JJ., concurred.